# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | |
|---|---|
| Headwater Research LLC, | Case No.  2:25-cv-00686 |
| *Plaintiff*, | |
| | **Complaint for Patent Infringement** |
| v. | |
| T-Mobile USA, Inc. and Sprint LLC, | **JURY TRIAL DEMANDED** |
| *Defendants*. | |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Headwater Research LLC ("Headwater") files this complaint against Defendants T-Mobile USA, Inc. and Sprint LLC, formerly known as Sprint Corporation (collectively, "Defendants" or "T-Mobile"), alleging infringement of U.S. Patent Nos. 8,797,908, 9,706,061, 10,028,144, 10,080,250, and 10,779,177.

## BACKGROUND

1.     This complaint arises from Defendants' infringement of the following United States patents owned by Headwater, each of which relate to wireless communications technology: U.S. Patent Nos. 8,797,908 ("'908 patent"), 9,706,061 ("'061 patent"), 10,028,144 ("'144 patent"), 10,080,250 ("'250 patent"), and 10,779,177 ("'177 patent") (collectively, "Asserted Patents").

2.     Dr. Gregory Raleigh—the primary inventor of the Asserted Patents—is a world-renowned scientist, inventor, and entrepreneur, with over 25 years of executive experience in several technology sectors including networking, cloud software, consumer services, wireless and military

systems. Dr. Raleigh holds Ph.D. and Masters degrees in Electrical Engineering from Stanford University, and a BS in Electrical Engineering from Cal Poly San Luis Obispo. He is the inventor of over 350 issued U.S. and international patents in several fields including radio systems and components, radar, mobile operating systems, cloud services, IoT, networking, consumer electronics, radiation beam cancer therapy and medical imaging.

3.    Dr. Raleigh has a long and distinguished record of significant contributions and advancements in wireless communications technology. His inventions, companies, and products have profoundly and positively impacted virtually every aspect of the mobile device and communications market. In 2005, Dr. Raleigh was named one of the "50 most powerful people in networking" because of his discoveries in wireless communications technology, and his work in multiplying the capacity of a radio link using multiple transmission and receiving antennas to exploit multipath propagation was described as the "most important wireless technology in the works." *See* https://www.networkworld.com/article/2316916/the-50-most-powerful-people-in-networking.html?page=2.

4.    In 1996, while at Stanford University, Dr. Raleigh presented the first mathematical proof demonstrating that multiple antennas may be used with special signal processing techniques to transmit multiple data streams at the same time and on the same frequency while in the presence of naturally occurring multipath propagation. Dr. Raleigh's work at Stanford has been widely adopted in modern multiple-input and multiple-output ("MIMO") radio communication and implemented in major wireless communication standards including 4G and 5G. *See, e.g.*, https://en.wikipedia.org/wiki/Gregory_Raleigh.

5.    Dr. Raleigh's groundbreaking work solved problems that had existed in wireless communication since the late 1800s and overturned a century of research and practice in the fields

of radio science and wireless communication theory. His work revealed that a new class of MIMO signal processing architectures would allow wireless devices to transmit multiple data streams at the same time on the same frequency thereby multiplying the capacity of wireless networks.

6.    Based on his discoveries, Dr. Raleigh co-founded Clarity Wireless to develop smart antenna products incorporating the advances of his MIMO signal processing architecture, and obtained patents now used in 4G and 5G cellular and Wi-Fi standards. Field trials of the smart antennas developed by Clarity Wireless demonstrated performance significantly above anything else contemplated at the time and continue to set standards for multipath broadband wireless access links. Shortly after those field trials, Cisco acquired Clarity in 1998 and hired Dr. Raleigh to continue to commercialize these technologies.

7.    After leaving Cisco, Dr. Raleigh founded Airgo Networks to develop the world's first MIMO wireless chipsets, networking software, reference design systems and commercial OEM products. Airgo Networks's chipset products significantly improved the speed and reliability of Wi-Fi, leading to the adoption of its technology as the core of Wi-Fi radio standards since 2006, and adoption of the chipsets into products sold across the globe. In 2006, Qualcomm acquired Airgo Networks and hired Dr. Raleigh to continue to commercialize these technologies. The Airgo team at Qualcomm spearheaded the creation of Wi-Fi standards and developed the first Qualcomm Wi-Fi chips for cell phones.

8.    Dr. Raleigh's innovations at Clarity Wireless, Cisco, Airgo Networks, and Qualcomm, resulted in widespread adoption of his technologies in a multitude of cellular and Wi-Fi standards, such as LTE, WiMAX, 802.11n, 802.11ac (Wi-Fi 5), and 802.11ax (Wi-Fi 6).

9.    After successfully founding and selling Clarity Wireless and Airgo Networks to Cisco and Qualcomm, respectively, Dr. Raleigh shifted his focus from solving radio-centric

problems to solving problems in how wireless services are provided to consumers. Dr. Raleigh foresaw significant data demand problems presented by the advent and adoption of smartphones. He sought to solve these data demand problems by improving end-user wireless devices and the services that support them.

10.     In 2008, Dr. Raleigh formed Headwater to develop mobile operating systems and cloud technology, which today, underpin the mobile phone and app industries. The patents in this action describe and claim some of the extraordinary inventions developed by Dr. Raleigh and others on the Headwater team.

11.     Smartphones and other mobile devices have become ubiquitous and inseparable components of our daily lives, allowing us to make and receive phone calls, get notifications, download music, upload photos, stream entertainment, transact business, exchange ideas, and keep us connected to our family and friends whether they are down the hall or around the globe. Users can get email, install apps, and browse the internet from these tiny devices by making use of data connectivity services. These devices accomplish these amazing feats by exchanging staggering amounts of data over the internet using wireless and cellular networks, relying on ubiquitous data connectivity to keep users up-to-date and connected.

12.     Since 2011, mobile device data demand has exploded—increasing by almost 400%—with each user consuming approximately 11.5 gigabytes of data per month. In the aggregate, this equates to approximately 90 exabytes of data consumption per month. *See, e.g.*, https://www.ericsson.com/en/reports-and-papers/mobility-report/mobility-visualizer?f=9&ft=2&r=1&t=11,12,13,14,15,16,17&s=4&u=3&y=2011,2027&c=3. For context: a single exabyte of data is equivalent to one billion gigabytes of data. Said another way, if one gigabyte

is the size of the Earth, then an exabyte is the size of the sun. *See, e.g.*, https://www.backblaze.com/blog/what-is-an-exabyte/.

13.    And mobile device data demand shows no sign of slowing down. Between now and 2027, mobile data demand is projected to increase more than three-fold, from 90 exabytes per month to a staggering 282 exabytes per month, with each user consuming an average of 41 gigabytes of data each and every month. *See, e.g.*, https://www.ericsson.com/en/reports-and-papers/mobility-report/mobility-calculator?up=2&bp=1&v=0&c=2; https://www.ericsson.com/en/reports-and-papers/mobility-report/mobility-visualizer?f=9&ft=2&r=1&t=11,12,13,14,15,16,17&s=4&u=3&y=2011,2027&c=3.





14.     Also in 2008, Dr. Raleigh founded ItsOn Inc., which licensed Headwater's intellectual property and implemented Headwater's technology into software and services that expanded cellular service plan offerings and improved device and data management capabilities. The tools and technologies delivered by ItsOn allowed carriers to implement Headwater's technologies in end-user devices—such as mobile phones and tablets—opening up new business models while also providing greater flexibility to carriers and device manufacturers and allowing them to reduce costs while simultaneously improving their devices and services.

**PLAINTIFF HEADWATER AND THE PATENTS-IN-SUIT**

15.     Plaintiff Headwater was formed in 2011 and has been in continued existence and operation since that time. Headwater is a Texas limited liability company organized under the laws of Texas, with its headquarters at 110 North College Avenue, Suite 1116, Tyler, Texas 75702.

16.     Headwater is the owner of U.S. Patent No. 8,797,908, titled "Automated device provisioning and activation," which issued August 5, 2014. A copy of the '908 patent is attached to this complaint as Exhibit 1.

17.     Headwater is the owner of U.S. Patent No. 9,706,061, titled "Service design center for device assisted services," which issued July 11, 2017. A copy of the '061 patent is attached to this complaint as Exhibit 2.

18.     Headwater is the owner of U.S. Patent No. 10,028,144, titled "Security techniques for device assisted services," which issued July 17, 2018. A copy of the '144 patent is attached to this complaint as Exhibit 3.

19.     Headwater is the owner of U.S. Patent No. 10,080,250, titled "Enterprise access control and accounting allocation for access networks," which issued September 18, 2018. A copy of the '250 patent is attached to this complaint as Exhibit 4.

20.     Headwater is the owner of U.S. Patent No. 10,779,177, titled "Device group partitions and settlement platform," which issued September 15, 2020. A copy of the '177 patent is attached to this complaint as Exhibit 5.

## DEFENDANTS AND THE ACCUSED INSTRUMENTALITIES

21.     On information and belief, Defendant T-Mobile USA is a corporation duly organized and existing under the laws of the State of Delaware, with its principal place of business at 12920 SE 38th Street, Bellevue, Washington 98006. On information and belief, T-Mobile USA may be served with process through its registered agent Corporation Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701.

22.     On information and belief, since on or about November 22, 1999, T-Mobile USA has been registered to do business in the state of Texas under Texas SOS file number

19119836005. On information and belief, T-Mobile USA has directly or indirectly conducted business and continues to conduct business directly or indirectly in the State of Texas and within the Eastern District of Texas.

23.     On information and belief, Defendant Sprint LLC ("Sprint"), formerly known as Sprint Corporation, is a Delaware limited liability company with its principal place of business at 12920 Southeast 38th Street, Bellevue, Washington 98006.

24.     On April 1, 2020, T-Mobile and Sprint closed a merger of the two companies, with the surviving company continuing to be T-Mobile.

25.     The Accused Instrumentalities are T-Mobile's cellular networks, servers, and services made, used, offered for sale, sold, and/or imported by Defendants in the United States (including eSIM provisioning and management systems/components such as SM-DP+, SM-DP, RSP, SM-SR, SM-DS, AAA/UDM/AUSF, HLR/HSS, and PCRF/PCF entities) as well as eSIM-enabled devices (including mobile phones, tablets, wearables, laptops, IoT devices, M2M devices, and vehicle infotainment systems) that operate on T-Mobile's cellular network, including devices used, offered for sale, sold, and/or imported by Defendants in the United States.

## JURISDICTION AND VENUE

26.     This action arises under the patent laws of the United States, Title 35 of the United States Code.

27.     This Court has original subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

28.     This Court has personal jurisdiction over T-Mobile in this action because T-Mobile has committed acts of infringement within this District giving rise to this action, has a regular and established place of business in this District, and has established minimum contacts with this forum

such that the exercise of jurisdiction over T-Mobile would not offend traditional notions of fair play and substantial justice. T-Mobile, directly and/or through subsidiaries or intermediaries, conducts its business extensively throughout Texas, by shipping, distributing, offering for sale, selling, and advertising its products and/or services in Texas and the Eastern District of Texas, regularly do business or solicit business, engage in other persistent courses of conduct, and/or derive substantial revenue from products and/or services provided to individuals in Texas, and commit acts of infringement of Headwater's patents in this District by, among other things, making, using, importing, offering to sell, and selling products and services that infringe the asserted patents, including without limitation the mobile electronic devices, including mobile phones and tablets, and the cellular networks, servers, and services accused of infringement in this complaint.

29.    T-Mobile, directly and/or through subsidiaries or intermediaries, have purposefully and voluntarily placed one or more products and/or services in the stream of commerce that practice the Asserted Patents with the intention and expectation that they will be purchased and used by consumers in the Eastern District of Texas. These products and/or services have been and continue to be purchased and used in the Eastern District of Texas.

30.    Venue as to T-Mobile is proper in this District under 28 U.S.C. §§ 1391 and 1400(b). On information and belief, T-Mobile resides in this District and/or has committed acts of infringement and has a regular and established place of business in this District.

31.    For example, T-Mobile advertises its wireless networks are available in Texas, including within the Eastern District of Texas. *See e.g.*, https://www.t-mobile.com/coverage/coverage-map :

32.     T-Mobile had approximately 110 million subscribers as of the fourth quarter of 2021. *See* https://www.telekom.com/en/media/media-information/archive/second-quarter-report-2022-1012842.

33.     T-Mobile owns, leases, maintains and/or operates cellular base stations throughout this District to sell and provide 5G data services to customers, in infringement of the Asserted Patents in this District.

34.     T-Mobile also sells mobile devices that operate on its wireless networks in Texas, including within the Eastern District of Texas. *See e.g.*, https://www.t-mobile.com/store-locator/tx/marshall/e-end-blvd-n-lawson-st:



## COUNT 1 – CLAIM FOR INFRINGEMENT OF THE '908 PATENT

35.     Headwater incorporates by reference each of the allegations in the foregoing paragraphs as if fully set forth herein and further alleges as follows:

36.      On August 5, 2014, the United States Patent and Trademark Office issued U.S. Patent No. 8,797,908, titled "Automated device provisioning and activation."  Ex. 1.

37.     Headwater is the owner of the '908 patent with full rights to pursue recover of royalties for damages for infringement, including full rights to recover past and future damages.

38.     The written description of the '908 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the nonconventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

39.    Defendants have directly infringed (literally and equivalently) and induced others to infringe the '908 patent by making, using, selling, offering for sale, or importing products that infringe the claims of the '908 patent and by inducing others to infringe the claims of the '908 patent without a license or permission from Headwater, such as for example inducing any vendor(s) of the Accused Instrumentalities to perform the patented methods of the '908 patent.

40.    On information and belief, Defendants use, import, offer for sale, and sell certain infringing products in the United States. Exhibit 6 provides a description of the Accused Instrumentalities and provides a chart showing how they infringe claim 1 of the '908 patent, which Headwater provides without the benefit of information about the Accused Instrumentalities obtained through discovery.

41.    Defendants also knowingly and intentionally induce and contribute to infringement of the '908 patent in violation of 35 U.S.C. §§ 271(b) and 271(c). For example, Defendants have had knowledge of the '908 patent and the infringing nature of the Accused Instrumentalities through at least the filing and service of this Complaint.

42.    Despite this knowledge of the '908 patent, Defendants continue to actively encourage and instruct their customers to use and integrate the Accused Instrumentalities in ways that directly infringe the '908 patent. Defendants do so knowing and intending that their customers will commit these infringing acts. Defendants also continue to make, use, offer for sale, sell, and/or import the Accused Instrumentalities, despite their knowledge of the '908 patent, thereby specifically intending for and inducing their customers to infringe the '908 patent through the customers' normal and customary use of the Accused Instrumentalities.

43.    Defendants have induced, and continue to induce, infringement of the '908 patent by actively encouraging others (including their customers) to use, offer to sell, sell, and import the

Accused Instrumentalities. On information and belief, these acts include providing information and instructions on the use of the Accused Instrumentalities; providing information, education and instructions to their customers; providing the Accused Instrumentalities to customers; and indemnifying patent infringement within the United States.

44.     Headwater has been damaged by Defendants' infringement of the '908 patent and is entitled to damages as provided for in 35 U.S.C. § 284, including reasonable royalty damages.

## COUNT 2 – CLAIM FOR INFRINGEMENT OF THE '061 PATENT

45.     Headwater incorporates by reference each of the allegations in the foregoing paragraphs as if fully set forth herein and further alleges as follows:

46.      On July 11, 2017, the United States Patent and Trademark Office issued U.S. Patent No. 9,706,061, titled "Service design center for device assisted services."  Ex. 2.

47.     Headwater is the owner of the '061 patent with full rights to pursue recover of royalties for damages for infringement, including full rights to recover past and future damages.

48.     The written description of the '061 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the nonconventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

49.     Defendants have directly infringed (literally and equivalently) and induced others to infringe the '061 patent by making, using, selling, offering for sale, or importing products that infringe the claims of the '061 patent and by inducing others to infringe the claims of the '061 patent without a license or permission from Headwater, such as for example inducing any vendor(s) of the Accused Instrumentalities to perform the patented methods of the '061 patent.

50.     On information and belief, Defendants use, import, offer for sale, and sell certain infringing products in the United States. Exhibit 7 provides a description of the Accused Instrumentalities and provides a chart showing how they infringe claim 1 of the '061 patent, which Headwater provides without the benefit of information about the Accused Instrumentalities obtained through discovery.

51.     Defendants also knowingly and intentionally induce and contribute to infringement of the '061 patent in violation of 35 U.S.C. §§ 271(b) and 271(c). For example, Defendants have had knowledge of the '061 patent and the infringing nature of the Accused Instrumentalities through at least the filing and service of this Complaint.

52.     Despite this knowledge of the '061 patent, Defendants continue to actively encourage and instruct their customers to use and integrate the Accused Instrumentalities in ways that directly infringe the '061 patent. Defendants do so knowing and intending that their customers will commit these infringing acts. Defendants also continue to make, use, offer for sale, sell, and/or import the Accused Instrumentalities, despite their knowledge of the '061 patent, thereby specifically intending for and inducing their customers to infringe the '061 patent through the customers' normal and customary use of the Accused Instrumentalities.

53.     Defendants have induced, and continue to induce, infringement of the '061 patent by actively encouraging others (including their customers) to use, offer to sell, sell, and import the Accused Instrumentalities. On information and belief, these acts include providing information and instructions on the use of the Accused Instrumentalities; providing information, education and instructions to their customers; providing the Accused Instrumentalities to customers; and indemnifying patent infringement within the United States.

54.     Headwater has been damaged by Defendants' infringement of the '061 patent and

is entitled to damages as provided for in 35 U.S.C. § 284, including reasonable royalty damages.

## COUNT 3 – CLAIM FOR INFRINGEMENT OF THE '144 PATENT

55.     Headwater incorporates by reference each of the allegations in the foregoing paragraphs as if fully set forth herein and further alleges as follows:

56.     On July 17, 2018, the United States Patent and Trademark Office issued U.S. Patent No. 10,028,144, titled "Techniques for device assisted services."  Ex. 3.

57.     Headwater is the owner of the '144 patent with full rights to pursue recover of royalties for damages for infringement, including full rights to recover past and future damages.

58.     The written description of the '144 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the nonconventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

59.     Defendants have directly infringed (literally and equivalently) and induced others to infringe the '144 patent by making, using, selling, offering for sale, or importing products that infringe the claims of the '144 patent and by inducing others to infringe the claims of the '144 patent without a license or permission from Headwater, such as for example inducing any vendor(s) of the Accused Instrumentalities to perform the patented methods of the '144 patent.

60.     On information and belief, Defendants use, import, offer for sale, and sell certain infringing products in the United States. Exhibit 8 provides a description of the Accused Instrumentalities and provides a chart showing how they infringe claim 1 of the '144 patent, which Headwater provides without the benefit of information about the Accused Instrumentalities obtained through discovery.

61.    Defendants also knowingly and intentionally induce and contribute to infringement of the '144 patent in violation of 35 U.S.C. §§ 271(b) and 271(c). For example, Defendants have had knowledge of the '144 patent and the infringing nature of the Accused Instrumentalities through at least the filing and service of this Complaint.

62.    Despite this knowledge of the '144 patent, Defendants continue to actively encourage and instruct their customers to use and integrate the Accused Instrumentalities in ways that directly infringe the '144 patent. Defendants do so knowing and intending that their customers will commit these infringing acts. Defendants also continue to make, use, offer for sale, sell, and/or import the Accused Instrumentalities, despite their knowledge of the '144 patent, thereby specifically intending for and inducing their customers to infringe the '144 patent through the customers' normal and customary use of the Accused Instrumentalities.

63.    Defendants have induced, and continue to induce, infringement of the '144 patent by actively encouraging others (including their customers) to use, offer to sell, sell, and import the Accused Instrumentalities. On information and belief, these acts include providing information and instructions on the use of the Accused Instrumentalities; providing information, education and instructions to their customers; providing the Accused Instrumentalities to customers; and indemnifying patent infringement within the United States.

64.    Headwater has been damaged by Defendants' infringement of the '144 patent and is entitled to damages as provided for in 35 U.S.C. § 284, including reasonable royalty damages.

### COUNT 4 – CLAIM FOR INFRINGEMENT OF THE '250 PATENT

65.    Headwater incorporates by reference each of the allegations in the foregoing paragraphs as if fully set forth herein and further alleges as follows:

66.     On September 18, 2018, the United States Patent and Trademark Office issued

16

U.S. Patent No. 10,080,250, titled "Enterprise access control and accounting allocation for access networks." Ex. 4.

67.    Headwater is the owner of the '250 patent with full rights to pursue recover of royalties for damages for infringement, including full rights to recover past and future damages.

68.    The written description of the '250 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the nonconventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

69.    Defendants have directly infringed (literally and equivalently) and induced others to infringe the '250 patent by making, using, selling, offering for sale, or importing products that infringe the claims of the '250 patent and by inducing others to infringe the claims of the '250 patent without a license or permission from Headwater, such as for example inducing any vendor(s) of the Accused Instrumentalities to perform the patented methods of the '250 patent.

70.    On information and belief, Defendants use, import, offer for sale, and sell certain infringing products in the United States. Exhibit 9 provides a description of the Accused Instrumentalities and provides a chart showing how they infringe claim 1 of the '250 patent, which Headwater provides without the benefit of information about the Accused Instrumentalities obtained through discovery.

71.    Defendants also knowingly and intentionally induce and contribute to infringement of the '250 patent in violation of 35 U.S.C. §§ 271(b) and 271(c). For example, Defendants have had knowledge of the '250 patent and the infringing nature of the Accused Instrumentalities through at least the filing and service of this Complaint.

72.    Despite this knowledge of the '250 patent, Defendants continue to actively encourage and instruct their customers to use and integrate the Accused Instrumentalities in ways that directly infringe the '250 patent. Defendants do so knowing and intending that their customers will commit these infringing acts. Defendants also continue to make, use, offer for sale, sell, and/or import the Accused Instrumentalities, despite their knowledge of the '250 patent, thereby specifically intending for and inducing their customers to infringe the '250 patent through the customers' normal and customary use of the Accused Instrumentalities.

73.    Defendants have induced, and continue to induce, infringement of the '250 patent by actively encouraging others (including their customers) to use, offer to sell, sell, and import the Accused Instrumentalities. On information and belief, these acts include providing information and instructions on the use of the Accused Instrumentalities; providing information, education and instructions to their customers; providing the Accused Instrumentalities to customers; and indemnifying patent infringement within the United States.

74.    Headwater has been damaged by Defendants' infringement of the '250 patent and is entitled to damages as provided for in 35 U.S.C. § 284, including reasonable royalty damages.

## COUNT 5 – CLAIM FOR INFRINGEMENT OF THE '177 PATENT

75.    Headwater incorporates by reference each of the allegations in the foregoing paragraphs as if fully set forth herein and further alleges as follows:

76.     On September 15, 2020, the United States Patent and Trademark Office issued U.S. Patent No. 10,779,177, titled "Device group partitions and settlement platform."  Ex. 5.

77.    Headwater is the owner of the '177 patent with full rights to pursue recover of royalties for damages for infringement, including full rights to recover past and future damages.

78.    The written description of the '177 patent describes in technical detail each

limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the nonconventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

79.     Defendants have directly infringed (literally and equivalently) and induced others to infringe the '177 patent by making, using, selling, offering for sale, or importing products that infringe the claims of the '177 patent and by inducing others to infringe the claims of the '177 patent without a license or permission from Headwater, such as for example inducing any vendor(s) of the Accused Instrumentalities to perform the patented methods of the '177 patent.

80.     On information and belief, Defendants use, import, offer for sale, and sell certain infringing products in the United States. Exhibit 10 provides a description of the Accused Instrumentalities and provides a chart showing how they infringe claim 1 of the '177 patent, which Headwater provides without the benefit of information about the Accused Instrumentalities obtained through discovery.

81.     Defendants also knowingly and intentionally induce and contribute to infringement of the '177 patent in violation of 35 U.S.C. §§ 271(b) and 271(c). For example, Defendants have had knowledge of the '177 patent and the infringing nature of the Accused Instrumentalities through at least the filing and service of this Complaint.

82.     Despite this knowledge of the '177 patent, Defendants continue to actively encourage and instruct their customers to use and integrate the Accused Instrumentalities in ways that directly infringe the '177 patent. Defendants do so knowing and intending that their customers will commit these infringing acts. Defendants also continue to make, use, offer for sale, sell, and/or import the Accused Instrumentalities, despite their knowledge of the '177 patent, thereby

specifically intending for and inducing their customers to infringe the '177 patent through the customers' normal and customary use of the Accused Instrumentalities.

83.    Defendants have induced, and continue to induce, infringement of the '177 patent by actively encouraging others (including their customers) to use, offer to sell, sell, and import the Accused Instrumentalities. On information and belief, these acts include providing information and instructions on the use of the Accused Instrumentalities; providing information, education and instructions to their customers; providing the Accused Instrumentalities to customers; and indemnifying patent infringement within the United States.

84.    Headwater has been damaged by Defendants' infringement of the '177 patent and is entitled to damages as provided for in 35 U.S.C. § 284, including reasonable royalty damages.

## **JURY DEMAND**

85.    Headwater demands a jury trial pursuant to Federal Rule of Civil Procedure 38.

## **RELIEF REQUESTED**

Headwater prays for the following relief:

A.    A judgment in favor of Headwater that Defendants have infringed the Asserted Patents, and that the Asserted Patents are valid and enforceable;

B.    A judgment and order requiring Defendants to pay Headwater past and future damages arising out of Defendants' infringement of the Asserted Patents in an amount no less than a reasonable royalty, costs, expenses, and pre- and post-judgment interest for its infringement of the asserted patents, as provided under 35 U.S.C. § 284;

C.    A judgment and order requiring Defendants to provide an accounting and to pay supplemental damages to Headwater, including, without limitation, pre-judgment and post-judgment interest;

     E.     A finding that this case is exceptional under 35 U.S.C. § 285, and an award of Headwater's reasonable attorney's fees and costs; and

     F.     Any and all other relief to which Headwater may be entitled.

Dated:  July 3, 2025

Respectfully submitted,

*/s/ Marc Fenster*
Marc Fenster
CA State Bar No. 181067
Email: mfenster@raklaw.com
Reza Mirzaie
CA State Bar No. 246953
Email: rmirzaie@raklaw.com
Brian Ledahl
CA State Bar No. 186579
Email: bledahl@raklaw.com
Ben Wang
CA State Bar No. 228712
Email: bwang@raklaw.com
Dale Chang
CA State Bar No. 248657
Email: dchang@raklaw.com
Paul Kroeger
CA State Bar No. 229074
Email: pkroeger@raklaw.com
Neil A. Rubin
CA State Bar No. 250761
Email: nrubin@raklaw.com
Kristopher Davis
CA State Bar No. 329627
Email: kdavis@raklaw.com
James S. Tsuei
CA State Bar No. 285530
Email: jtsuei@raklaw.com
Philip Wang
CA State Bar No. 262239
Email: pwang@raklaw.com
Jason M. Wietholter
CA State Bar No. 337139

Email: jwietholter@raklaw.com
Ryan K. Lundquist
CO State Bar No. 56449
Email: rlundquist@raklaw.com
**RUSS AUGUST & KABAT**
12424 Wilshire Blvd. 12th Floor
Los Angeles, CA 90025
Telephone: 310-826-7474

**ATTORNEYS FOR PLAINTIFF,**
**Headwater Research LLC**